QUESTIONS: 1. In view of the failure of the Legislature to appropriate funds to or for the use of the State Board of Building Codes and Standards for the 1976-1977 fiscal year, does the board continue to exist after January 1, 1977? 2. If the answer to question 1 is in the affirmative, does the board possess the authority or responsibility to enforce and carry out the duties and requirements of the Florida Building Codes Act of 1974 in view of the lack of financial and staff resources created by said lack of funds? 3. In view of the failure of the Legislature to adopt the State Minimum Building Codes on or before January 1, 1977, as required by s. 553.78(7), F. S., is the Interim State Building Code of lawful effect after January 1, 1977?
SUMMARY: Legislative failure to appropriate funds for travel expenses and staff support personnel of the State Board of Building Codes and Standards does not operate to abolish the board. The board continues in existence until the statutory authority for its existence is either expressly or impliedly repealed by the Legislature. To the extent that the board may operate under this legislatively imposed fiscal handicap, it does so with undiminished power and authority. Legislative failure to adopt the State Minimum Building Codes prior to January 1, 1977, as specified by s. 553.78(7), F. S., does not operate to repeal or otherwise terminate the existence of the Interim State Building Code as created and established by s. 553.73(2), F. S. Until determined otherwise by definitive legislative action, the Interim State Building Code remains in legal existence, is of full force and effect, and must be enforced as required by ss. 553.73(5) and553.80, F. S. The State Board of Building Codes and Standards, hereinafter referred to as the "board," was created and established within the Department of Community Affairs, hereinafter referred to as the "department," by Ch. 74-167, Laws of Florida. The general and specific powers and duties of the board and the department material to this opinion are set forth in ss. 553.75, 553.76, and 553.77, F. S., as well as in ss. 553.73(4) and (6), 553.74(3), 553.81, and 553.83, F. S. According to your budget office, appropriations for the salaries and expenses of the board's support staff and staff-supported services and administrative operating expenses for the 1975-1976 fiscal year were included in the department budget under Ch. 75-280, Items 241-246, entitled Division of Technical Assistance. For the 1976-1977 fiscal year, the Legislature abolished 12 of the board's 16 staff positions included in the department's legislative budget as submitted to the Legislature and deleted the funding therefor as well as the expenses allocated to the board's administrative and operating costs, such as board and staff travel expenses. This legislative action leaves the remaining four positions assigned to Factory Built Housing to be funded from the Factory Built Housing Trust Fund. It is my understanding, as represented to me by your department officials, that the deletion of these staff positions and travel expenses makes board operation impossible. AS TO QUESTIONS 1 AND 2: Section 1(c), Art. VII, State Const., provides: "No money shall be drawn from the treasury except in pursuance of an appropriation made by law." Section 215.35, F. S., provides inter alia, that "[n]o warrant shall issue until same has been authorized by an appropriation made by law." Further, s.216.192(1), F. S., states, in pertinent part, [t]he Comptroller shall authorize all expenditures to be made from the appropriations on the basis of such releases and in accordance with the approved budget [see s. 216.181, F. S.] and not otherwise. Expenditures shall be authorized only in accordance with legislative authorizations. (Emphasis supplied.) Cf. AGO's 075-96, holding that in view of s. 1(c), Art. VII, State Const., and ss. 215.35, 216.181, and 216.192(1), F. S., when there had been no legislative appropriation of funds to the Department of Natural Resources for the purpose of carrying out the powers, duties, and functions of the Commission on Marine Sciences and Technology and when funds for such purposes were not included in the budget and release plan required by ss. 216.181 and216.192(1), the department was neither authorized nor required to assume or execute such powers, duties, and functions, and 067-64. In view of the foregoing, it becomes evident that, in the absence of a legislative appropriation of funds to the board or to the department for expenditure in fulfillment of board statutory duties and functions, and in the absence of any funds therefor within the approved operating budget and plan for the release of appropriations as required by s. 216.192, F. S., no moneys may be thus expended by the board or department; see AGO 071-28; cf. In re Advisory Opinion to the Governor, 55 So.2d 99 (Fla. 1951); Petition of The Florida Bar, 61 So.2d 646 (Fla. 1952); and the Comptroller may not issue warrants or otherwise authorize the expenditure of funds by the board or by the department in behalf of the board for such purposes. Florida Development Commission v. Dickinson, 229 So.2d 6 (1 D.C.A. Fla., 1969), cert. denied,237 So.2d 530 (Fla. 1970). As the board was created and established by legislative act, the sole method of termination of its legal status is likewise by legislative act, i.e., express abolishment, or express or implied repeal of s. 553.74, F. S. Cf. Treadwell v. Town of Oak Hill, 175 So.2d 777 (Fla. 1965), wherein the Supreme Court held accordingly with regard to the abolishment or dissolution of municipalities; also see AGO 076-96. A legislative enactment may be repealed only by further legislation and not by time or changed conditions or by nonuse and may not be considered repealed or inoperative on the basis that there is no longer any necessity for the statute. See State v. Egan, 287 So.2d 1 (Fla. 1973); cf. Volusia County v. State, 125 So. 375, 380 (12) (Fla. 1929). I find no such repealing statute to exist, and a general appropriations act cannot constitutionally operate to effect any such modification or repeal of existing statutes or to effect any substantive changes in subsisting laws. See Department of Administration v. Horne, 269 So.2d 659 (Fla. 1972); Graves v. Wiggins, 257 So.2d 268 (3 D.C.A. Fla., 1972). Therefore, I am of the opinion that, although it may be without funds to pay its operational expenses and as a consequence thereof may be unable to actually discharge its lawful duties and exercise its powers, the board continues to have a legal status and existence under current law. Cf. Treadwell v. Town of Oak Hill, supra, in which the court held that nonuse of municipal powers did not result in the dissolution of a municipality. When a valid statute confers a power or imposes a duty upon designated officials, a failure to exercise that power or to perform that duty does not affect the existence of the power or duty or curtail the right to require performance in a proper case. State v. Burr, 84 So. 61, 74 (Fla. 1920). Analogously, the inability or failure of the board to execute its duties and functions or exercise its powers due to a lack of funds appropriated to defray its operational costs does not result in the dissolution or termination of the board or otherwise detract from the authority or the duties and functions cast upon it or conferred upon it by the statute or relieve it of any statutorily imposed duties or responsibilities. I am further of the opinion that, to whatever extent it is possible in the absence of such funding as discussed above, for the board or the department to discharge their respective statutory duties and functions and exercise their powers conferred by law (see ss.553.73(4) and (6); 553.75(2) and (3); 553.76; 553.77(1), (2), and (3); 553.81(1) and (2); and 553.83, F. S.), should either or both do so, either or both act with undiminished powers in regard to the performance of their lawfully prescribed duties and functions. Also see s. 20.05(1), F. S., with respect to the powers and duties of the head of the department, and AGO 075-96. When administrative officials having statutory powers and duties decline to exercise said authority or perform said duties conferred or imposed upon them by law, they may, by mandamus in the absence of other adequate remedy afforded by law, be required, in proper cases duly presented, to proceed with the performance of their duties. State v. Burr, 84 So. 61, 69 (Fla. 1920). In Broward County Board of Rules and Appeals v. Rush Hampton Industries, 332 So.2d 666 (4 D.C.A. Fla., 1974), the court declared that the exclusive method for reviewing decisions of such county boards is by appeal to the state board. Section 553.81(1), F. S., provides that the board shall have discretionary authority to hear appeals relating to substantial questions concerning the interpretation, enforcement, administration, or modification by local governments of the Interim State Building Code, and subsection (2) thereof imposes a duty upon the board in hearing appeals to render interpretations of such provisions of the code as shall be pertinent to the matter at issue. The secretary of the department is authorized to give advisory interpretations thereof in accordance with regulations established by the board. Subsection 553.81(3) grants an appellant the right to request judicial review by the district court of appeal of a decision of the board, as well as appeal from cases wherein the board has declined to hear an appeal from the action or order of the local government or enforcing agency, in accordance with the provisions of part III of Ch. 120, F. S., or its successor. See Rush Hampton, supra, at pp. 667 (1), 668 (1), and 669. However, should the board be financially unable to meet and convene hearings in conformity with Ch. 120 as provided by s. 553.81, supra, and thus either fail to hear or decline to hear appeals from such local governments or enforcing agencies, it is unclear which court might accept or assume jurisdiction to review the administrative action of the local county boards. Cf. s.120.73; ss. 4(b)(1) and (2) and 5(b), Art. V, State Const. The court in Rush Hampton, supra, stated that Ch. 74-167, supra, requires appeals from decisions of local governments or enforcing agencies be taken to the state board "or district court of appeal rather than to the circuit court" and that "[s]hould the State Board decline to review the decision [of the local enforcing agency] . . . or should either party be aggrieved by the decision of that board, judicial review is available to the district court of appeal. s. 553.81(3), F. S., 1974." The court further stated at p. 669: "Judicial review commences with the district courts of appeal." However, this review is predicated upon board action, of which there would be none in this case. The resolution of this jurisdictional issue is properly a judicial question which cannot be resolved by this office, and thus it would be inappropriate for me to comment further thereupon. As indicated above, in proper cases duly presented by those possessing the requisite legal standing, the judicial tribunal or administrative officials declining either to exercise jurisdiction that they may possess and by law ought to exercise or to perform duties conferred on them by law may by mandamus be required to exercise such jurisdiction or to perform such duties. Burr v. State, supra; State ex rel. Biscayne Kennel Club v. Board of Business Regulation of State, 276 So.2d 823 (Fla. 1973); State ex rel. Corbett v. Churchwell, 215 So.2d 302 (Fla. 1968); State ex rel. Utilities Operating Co. v. Mason, 172 So.2d 225 (Fla. 1964). AS TO QUESTION 3: Section 553.73(2), F. S., created the Interim State Building Code, consisting of the construction requirements set forth in any of the nationally recognized model codes designated therein, and, pursuant to s. 553.73(5), F. S., local governments and affected state agencies are charged with the responsibility of enforcing said Interim Building Code. Section 553.79(3), F. S., provides that the State Minimum Building Codes, after the effective date of their adoption pursuant to part VI of Ch. 553, F. S., shall supersede all other building construction codes or ordinances in the state, whether at the local or state level and whether adopted by legislative enactment or administrative regulation, unless such building construction codes or ordinances are determined by the Board of Building Codes and Standards to be more stringent than the State Minimum Building Codes. Section 553.78(7) provides that the State Minimum Building Codes adopted pursuant to that section shall become effective on the date set by the Legislature at the time of adoption, which shall in no case be later than January 1, 1977. The above-noted legislative contingency with respect to the supersedure of building construction codes or ordinances by the State Minimum Building Codes and condition precedent concerning the effective or operative date of the State Minimum Building Codes has not occurred, and therefore s. 553.79(3), F. S., has no operative force on the Interim State Building Code created by s.553.73(2), F. S. See, generally 82 C.J.S. Statutes s. 410; and cf. Brown v. City of Tampa, 6 So.2d 287 (Fla. 1942); In re Opinion to the Governor, 239 So.2d 1, 10 (Fla. 1970). No statute has any force until such time as by its terms it takes effect or becomes an operative law, Neisel v. Moran, 85 So. 346 (Fla. 1920), and this rule would seem to be equally applicable to the instant situation. Since the State Minimum Building Codes contemplated by s. 553.78, F. S., have not yet been adopted, they can not supersede existing building construction codes or ordinances (state or local) as contemplated by s. 553.79(3), supra, which so provides only "after the effective date of their adoption." Thus, as the statutory requirement for the operation of s. 553.79(3), the adoption of the State Minimum Building Codes, has not been met or satisfied, s. 553.79(3) is, in this regard, inoperative and the Interim State Building Code continues in full force and effect. As earlier stated, a general appropriations act cannot constitutionally operate to effect any modification or repeal of existing statutes or to effect any substantive changes in subsistent laws. Department of Administration v. Horne, supra. No repugnancy such as is required to impliedly repeal the Interim State Building Code or s. 553.73, F. S., is found in any provision of part VI of Ch. 553, F. S., and I am unaware of any other such statutory provision elsewhere. Lacking such repugnancy, implied repeal, which is not favored by law, State v. Collier County,171 So.2d 890 (Fla. 1965); Sweet v. Josephson, 173 So.2d 444 (Fla. 1965); and Markham v. Blount, 175 So.2d 526 (Fla. 1965), will not obtain. Sanders v. Howell, 74 So. 802 (Fla. 1917); Atkinson v. State, 23 So.2d 524 (Fla. 1945); State v. Digman, 294 So.2d 325
(Fla. 1974). Therefore, as no statute is found which either expressly or impliedly repeals or supersedes the Interim State Building Code and s. 553.78(7), F. S., does not provide a termination or expiration date for the Interim Code, the Interim State Building Code continues in existence, is of full force and effect, and must be enforced as prescribed by ss. 553.73(5) and553.80, F. S.