DUVAL COUNTY, CLYDE H. SIMPSON, as Chairman, and D. C. BROWN, JOSEPH F. HAMMOND, J. G. CARY and RAY GREEN, as members of the Board of County Commissioners of Duval County, and EMORY H. PRICE, as Supervisor of Registration of said County, v. JAMES JENNINGS, and JOHN A. CARRAN, a minor, by JAMES TAIT, as his Legal Guardian and next friend, and ADAM KRENZER.

164 So. 356.
Opinion Filed November 26, 1935.

*Fant & Stanley,* for Appellants;

*R. R. Axtell* and *W. Gregory Smith,* for Appellees.

DAVIS, J.—This is an appeal from an interlocutory order granting an injunction. The substance of the complaint was that the Board of County Commissioners of Duval County, Florida, acting in pursuance of Chapter 17534, Acts 1935, Special Laws of Florida, had adopted a resolution calling a special election on October 8, 1935, to determine whether the Duval County St. Johns River Bridge

constructed under Chapter 7462, Acts 1917, Special Laws of Florida, should be operated from and after January 1, 1936, as a free bridge and that to hold such special election in accordance with the resolution thus adopted would be violative of the vested constitutional rights of complainants in the tolls so attempted to be lifted from the affected bridge. On an earlier application, supersedeas of the injunctive order was denied, and the case submitted for determination on its merits without further oral argument.

It is first argued by appellants that appellee, Carran, although shown by the bill of complaint to be the holder of a $1,000.00 Duval County St. Johns River Bond in the amount of $1,000.00, was without any equitable interest to have granted the relief he sought, because the object of his injunction bill was to prevent the calling and holding of an election, which, *ex proprio vigore,* could not effectually impair complainant's said bond; that the calling and holding of an election, being a political matter, should not be interfered with by a court of equity, but that the election should be allowed to proceed and complainant awarded relief against its adverse result, should that contingency occur to his detriment.

We think the aforementioned objection not well founded. The election here sought to be enjoined was not an ordinary political election relating to the people's right to choose elective officials to govern them, but was special and extraordinary statutory election, the mere holding of which was shown by the bill of complaint to involve the expenditure of alleged trust funds in which complainant asserted and claimed a direct interest, by seeking to have them conserved for his benefit.

The rule in such cases is that in elections not involving the right to public office, where asserted vested contract or

property rights can be more effectually protected by restraining in advance a threatened unlawful election tending toward their encroachment, a court of equity is not bound to speculate upon the likely or probable result of the election if held, but may enjoin the holding of it in a clear case. See: 9 R. C. L. 1001, Section 22. Compare: Joughin v. Parks, 107 Fla. 833, 143 Sou. Rep. 145, and State, *ex rel.* Landis, v. Tedder, 106 Fla. 140, 143 Sou. Rep. 148. So the complainants' bill in this case was well founded if threatened violation of complainants' equitable rights was otherwise clearly shown.

In 1917 the Legislature enacted Chapter 7462, Acts 1917, whereby the Board of County Commissioners of Duval County were authorized to issue the series of bonds of which complainant below was one of the holders. Under the statute the voters of Duval County were given their choice of a free bridge or a toll bridge at the time the bonds were voted and their choice was for a toll bridge. Under Section 6 of the Act it was expressly provided that: "All tolls and charges collected for the use of said bridge shall be expended as follows: (1) In the operation, maintenance and repair of said bridge, and the approaches thereto; (2) In the payment of the interest on said bonds; (3) In providing a sinking fund for said bonds." Under Section 5 of the Act the schedule of tolls collectible was expressly committed to the decision of the Circuit Court of Duval County. Contained in this section is an express provision to the effect that "When tolls and charges are approved or fixed by the Circuit Judge, they should not be changed or altered for a period of two years without first obtaining the leave of the Court to submit a new schedule of tolls and charges," as well as a provision that all tolls and charges on the bridge

shall be approved by the Circuit Court before being made effective.

Under the settled law of this State, all provisions of Chapter 7462, *supra,* relating to the imposition and collection of tolls became a part of the contract security given by that Act to all takers and holders of Duval County St. Johns, River Bridge Bonds. And such provisions cannot be subsequently changed or diminished by the Legislature to the prejudice or likely impairment of the obligation of contract thus brought into existence when the bonds were sold pursuant to a statutory requirement for the imposition and collection of "reasonable" tolls as their security.*

Comprehended in that contract also was the statutory provision that the Circuit Court of Duval County, not the Legislature, nor the voters of Duval County, should have power to decide whether substantial or merely nominal tolls shall be collectible at any given time in order to make the performance of the bond obligation at maturity safe for the investors. And such special statutory provision of Chapter 7462, *supra,* has been heretofore brought into controversy and has been expressly upheld as a valid one by this Court. See State, *ex rel.* Young, v. Duval County, 76 Fla. 180, 79 Sou. Rep. 692.

Appellees in their bill have taken the position that the provisions of Chapter 7642, Acts 1917, under which the bridge bonds were issued, and especially the provisions of that Act to the effect that the County Commissioners of Duval County shall charge and collect reasonable tolls to be confirmed by the Duval County Circuit Court and altered.

---

*See: State, *ex rel.* Sherrill, v. Milam, 113 Fla. 491, 153 Sou. Rep. 100; Folks v. Marion County, 121 Fla. 17, 163 Sou. Rep. 298; United States v. Quincy, 4 Wall. 535, 182 L. Ed. 403; Ponder v. Graham, 4 Fla. 23.

from time to time by the Court and by no other authority, and that such tolls shall be collected charged with a statutory trust that permits them to be used only for the maintenance and operation of the bridge and afterward to pay interest on and the principal of the bonds, are a part of the bond contract. That such is clearly the law admits of no doubt under the authorities hereinbefore cited in a footnote.

It is likewise a legal corollary to the foregoing statement of the law pertaining to the nature of the contract created by Chapter 7462, *supra,* that until the bonds that are now outstanding are actually paid, they cannot be disregarded as a non-existing charge against the tolls, although there may be, as now claimed in this case, in the hands of the bond trustees the sum of $327,417.77 which is more than sufficient to pay the outstanding bonds and interest, including that of complainant, amounting to a total of $121,-711.00. As has been expressly held by the Court in a prior decision on this precise proposition with reference to this very bridge: "Provision for the payment of the bonds is not the legal equivalent of payment." State, *ex rel.* Landis, v. Duval County, 105 Fla. 174, 141 Sou. Rep. 173. The last stated holding is still applicable notwithstanding the fact that there is now in the hands of the St. Johns River Bridge Bond Trustees the sum of $327,417.77, or more than twice the amount of bonds and interest outstanding and unpaid, because said sum is not held solely for the benefit of the bondholders, but is under the very language of Section 6 of Chapter 7462, Acts of 1917, subject to a prior charge for disbursements required to be made in the operation, maintenance and repair of the said bridge. In short, under the terms of the Act the *duty* of the County Commissioners "to collect a reasonable toll and charge" in accordance with schedules approved by the Circuit Court after due investi-

gation, constitutes the security for appellees' bonds and the bond fund on hand is merely an incidental part of that security charged with a statutory trust in favor of those entitled to look to it for payment when their bonds shall have matured.

We hold therefore that the attempted disbursement of $3,684.21 of the Duval County St. Johns River Bridge Bond Trustees' funds for the purpose of using them to pay for a special statutory election required to be held in accordance with Chapter 17534, Acts of 1935, Special Laws of Florida, is an unauthorized and illegal attempt to divert trust funds, for the restraining of which action an injunction will lie. Trustees Internal Imp. Fund v. Bailey, 10 Fla. 112; Town of North Miami v. Travis, Co., 118 Fla. 879, 160 Sou. Rep. 360; City of Winter Haven v. Summerlin, 114 Fla. 727, 154 Sou. Rep. 863.

We hold further that under Chapter 7462, Acts 1917, the continued collection of reasonable tolls and charges for the benefit of holders of St. Johns River Bridge Bonds of Duval County is a contractually secured obligation that cannot be impaired by the provisions of Chapter 17534, Acts 1935, providing for a free bridge so long as the bonds remain unpaid, unless ultimate payment of the bonds and interest be actually secured by some special fund set aside for the *sole* benefit of the bondholders and adequate to satisfy their demands without being subordinate to any prior charges for maintenance, operation, etc., payable out of same in preference to the bondholders' demands should the bridge be damaged or destroyed.

We hold also that during the life of the bonds the authority to determine the amount to be charged for tolls is within the jurisdiction of the Circuit Court of Duval County which has authority to make such tolls nominal or substantial, as

the factual conditions for the time being may seem to warrant without jeopardizing the vested interests of the security holders for whose benefit the maintenance of the bridge accompanied by an exercise of its toll collecting power was primarily provided to be pledged as security.

Decree affirmed.

WHITFIELD, C. J., and TERRELL and BROWN, J. J., concur.

BROWN, J., concurs specially.

BROWN, J. (concurring specially).—The Act here in question, Chapter 17534, is, in my opinion, invalid, in that it embraces more than one subject, in both its title and in the body of the Act, thus clearly violating Section 16 of Article III of the Constitution. See Colonial Investment Co. v. Nolan, 100 Fla. 1349, 131 So. 178, and cases therein cited. This alone is sufficient to sustain the action of the lower court in granting the injunction.